ARABIAN AMERICAN OIL
COMPANY, Plaintiff,

v.

Lee Letterio SCARFONE and Architect Lee Scarfone Associates, Defendants.

No. 84–1536–CIV–T–17.

United States District Court,
M.D. Florida,
Tampa Division.

May 19, 1989.

See also 685 F.Supp. 1220.

Gregg D. Thomas, Tampa, Fla., for plaintiff.

Lee Letterio Scarfone and Architect Lee Scarfone Associates, defendants pro se.

ORDER

ALAIMO, Chief Judge.

Before the Court is plaintiff's motion to alter or amend the judgment. As plaintiff is not the proper party to recover under the statutory claims involved herein, the motion will be denied absent ratification by, or joinder of, the real party in interest.

BACKGROUND

Arabian American Oil Company ("ARAMCO") instituted this suit against Lee Scarfone and his business, Architect Lee Scarfone Associates ("ALSA"), alleging breach of contract, fraud, violations of federal and state racketeering statutes ("RICO"), 18 U.S.C. § 1961 *et seq.;* Fla. Stat. § 895.01 *et seq.,* and the Florida civil theft statute, Fla.Stat. § 812.035. These claims arose out of ALSA's collection from ARAMCO of overcharges in the form of billing time not spent, billing workers at rates higher than what was actually paid and billing work performed by nonexistent

employees. A jury trial resulted in a verdict for approximately $3.6 million in favor of ARAMCO on each of these causes of action.

Scarfone subsequently filed a motion for judgment notwithstanding the verdict. Based upon testimony adduced at trial that ARAMCO had been reimbursed by the Kingdom of Saudi Arabia ("the Kingdom") for the payments it made to Scarfone, the Court found that the Kingdom, and not ARAMCO, suffered the injury contemplated by the statutes involved. Accordingly, the Court granted Scarfone's motion for judgment notwithstanding the verdict as to the statutory claims. *See* Order and judgment dated September 14, 1988.

ARAMCO subsequently filed this motion to alter or amend the judgment, in which it seeks judgment entered on its statutory claims. ARAMCO's primary argument in support of the instant motion is that, due to a misunderstanding of the nature of the relationship between ARAMCO and the Kingdom, the Court incorrectly concluded that ARAMCO is not the proper plaintiff to bring the statutory claims. Alternatively, ARAMCO asserts that, even if the Court is correct in its view that it properly may not maintain the statutory causes of action, pursuant to Fed.R.Civ.P. 17(a), the Court was required to provide ARAMCO the opportunity to seek ratification by, or joinder of, the Kingdom prior to granting Scarfone's motion for judgment notwithstanding the verdict.

DISCUSSION

I. *Propriety of ARAMCO's Maintenance of the Statutory Claims*

ARAMCO asserts several theories in support of its contention that it is the proper plaintiff to maintain the statutory claims.

(A) *Direct Injury*

ARAMCO insists that the Court mischaracterized the nature of its relationship with the Kingdom as being merely contractual. Instead of the Court's characterization of ARAMCO as a "service" corporation under contract with the Kingdom to provide assistance in the production of oil products,

ARAMCO contends that it is a trustee of the Kingdom's oil production assets. ARAMCO contends that its status as a trustee created liability to the Kingdom for the wrongful depletion of the Kingdom's assets resulting from payment of Scarfone's overcharges. ARAMCO thus argues that it would have faced "significant exposure" to the Kingdom in the absence of the instant suit against Scarfone and that this potential exposure satisfies the statutory requirement for injury. There was no evidence to support such a conclusion and the argument is otherwise without merit.

■ It is well established that potential exposure or a mere possibility of suit is insufficient to satisfy the requirement of injury necessary to maintain a suit pursuant to 18 U.S.C. § 1964(c). As aptly stated by one district court:

> [T]he language of § 1964(c) makes clear that a party must actually have been injured—that is, subject to injury or inevitably subject to a future injury—in order to have standing to bring a civil RICO claim. Mere speculation that some injury might occur—for example, that an injury might be inflicted if some third party would choose to bring a lawsuit to determine potential liability of the plaintiff—is insufficient to state a civil RICO claim.

*Anitora Travel, Inc. v. Lapian,* 677 F.Supp. 209, 216 (S.D.N.Y.1988). Since the provisions of the Florida RICO and civil theft statutes applicable to this lawsuit, Fla.Stat. § 895.05(7) (1984), 812.035(7) (Supp.1984), track the federal provision thereby making this rationale applicable to those claims as well as the claim based upon the federal RICO statute, this argument must fail as a valid ground to alter or amend the judgment.

(B) *Real Party in Interest*

ARAMCO's next argument is that, even if the Court rejects the argument that it has suffered direct injury, it nonetheless has the power to maintain this suit in a representative capacity pursuant to Fed.R. Civ.P. 17(a) by virtue of its status as trustee of the Kingdom's oil production assets.

As support for this proposition, ARAMCO points to the express language of Rule 17(a)[1], arguing that the Rule's enumeration of both a "trustee of an express trust" and "a party with whom or in whose name a contract has been made for the benefit of another" as real parties in interest expressly permits its maintenance of the statutory claims in this suit.

In determining if a plaintiff is a real party in interest, the test is whether the governing substantive law confers the right sought to be enforced upon that plaintiff. *Lubbock Feed Lots, Inc. v. Iowa Beef Processors, Inc.*, 630 F.2d 250, 256–57, *reh'g denied*, 634 F.2d 1355 (5th Cir.1980). Thus, simply because a plaintiff may be characterized as a member of one of the classes of persons enumerated in Rule 17(a) is not dispositive of the real-party-in-interest question, as that Rule assumes that the enumerated persons are granted the right to sue by the applicable substantive law. *Lubbock Feed Lots, Inc., supra* at 257.

The applicable substantive law on this issue, 18 U.S.C. § 1964(c) provides:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

Thus, the applicable law confers real-party-in-interest status only to those persons "injured" in their business or property.

In the Order of September 14, 1988, the Court addressed the issue of whether *ARAMCO* suffered injury necessary for maintenance of its statutory claims and concluded, based upon the decision of *County of Oakland v. City of Detroit*, 620 F.Supp. 1399 (E.D.Mich.1985), *rev'd*, 866 F.2d 839 (6th Cir.1989), that it had not. In that case, Oakland County brought a federal antitrust and RICO action against the City of Detroit for alleged overcharges for sewage services. The complaint alleged that the County, as opposed to the City of Detroit, collected sewage fees from municipalities, located within sewage disposal districts operated by the County, and that Detroit was not paid by the local municipalities, but by the County.

The district court dismissed the complaint on the ground that the County was merely an intermediary, or "conduit," such that the municipalities bore the entire burden of the alleged overcharges by paying sewage bills submitted by the County. Because the County had passed the overcharges to the municipalities, the court reasoned that the County had not sustained the type of injury to its business or property within the meaning of the statutes on which the suit was brought.

Applying that rationale to this case, the Court found that ARAMCO, like the County of Oakland, acted as a conduit for ALSA and the ultimate purchaser of ALSA's product, the Kingdom, and therefore concluded that ARAMCO sustained no injury as contemplated by the statutes at issue. Accordingly, the Court determined that it was error to submit the racketeering and civil theft claims to the jury.

Following entry of that order, and apparently unbeknownst to the parties to this suit, the Sixth Circuit reversed the district court's order in *County of Oakland v. City of Detroit*, 866 F.2d 839 (6th Cir.1989). Several factors apparently motivated the reversal. One of these factors was that the County would be liable to the City for sewage charges even if the municipalities did not pay. Another factor considered by the court was that although the County might successfully pass on all of the costs of the alleged overcharges, it could nonetheless suffer injury to its business or property via the negative effect which the overcharges could have in the County's efforts to attract and retain people, industry

---

**1.** Fed.R.Civ.P. 17(a) provides, in relevant part: Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in that person's own name without joining the party for whose benefit the action is brought. . . .

and commerce. Finally, expressing concern with the unmanageably large number of municipal consumers and the "confusing array of formulae" with which the individual municipalities rates were computed, the court stated:

> [T]o allow the passing on defense in this particular case, we believe, would invite precisely the sort of complexities, uncertainties, and other untoward consequences that the indirect purchaser rule was designed to avoid.

> We are not dealing here with a situation in which an antitrust violator has sold a single item to a single middleman who has resold the item under a pre-existing cost-based contract to a single consumer. In a situation of that sort it might well be easy to prove that the burden of the overcharge had been borne solely by the consumer—and in the absence of other consumers, there could not be any problem in determining how to allocate the overcharge at the consumer level.

*County of Oakland,* 866 F.2d at 850.

■ Unlike the situation confronting the Sixth Circuit in *County of Oakland,* the burden of proving that ARAMCO's overcharges were borne solely by the Kingdom was relatively simple; and there was no difficulty whatsoever associated with determining the proper allocation of the overcharges which the Kingdom ultimately paid. Thus, while the *County of Oakland* appellate court's opinion certainly nullifies the viability of the "passing on" defense in the factual context therein presented, the Court finds those circumstances sufficiently distinguishable from the facts of this case as properly to permit its application here. Accordingly, the Court remains firm in its position that, because of the Kingdom's reimbursement to ARAMCO of Scarfone's overcharges, ARAMCO suffered no injury for purposes of the statutes in question. Therefore, to the extent that ARAMCO remains the sole party seeking recovery under the statutory claims, the Court will refrain from entering judgment upon the jury's awards under those statutes.

**(C)** *Ratification by Real Party in Interest*

■ Finally, ARAMCO contends that, in the event the Court concludes that ARAMCO is not the real party in interest and not entitled to recover under the statutory claims, the proper remedy was not to grant a judgment notwithstanding the verdict to Scarfone on these claims but, rather, to allow ARAMCO, pursuant to Fed.R.Civ.P. 17(a), the opportunity to seek ratification by, or joinder of, the Kingdom. As the Kingdom's ratification of a judgment on ARAMCO's statutory claims would effectively moot any real-party-in-interest objections, *see National Safe Corp. v. Texidor Security Equip., Inc.,* 101 F.R.D. 467, 469 (D. Puerto Rico 1984); *Clarkson Co. Limited v. Rockwell Intern'l Corp.,* 441 F.Supp. 792, 797 (N.D.Cal.1977), the Court finds merit in ARAMCO's suggestion.

Ratification by, or joinder of, a real party in interest is provided for by Fed.R.Civ.P. 17(a), which provides, in relevant part:

> No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Although not a frequently encountered subject in the law, ratification is an entirely proper method of resolving controversies over real parties in interest. *Clarkson Co. Limited Corp., supra* at 797. Whether ratification is appropriate in a given case is a matter for the district court's discretion. *Motta v. Resource Shipping & Enterprises Co.,* 499 F.Supp. 1365, 1371 (S.D.N.Y. 1980). In exercising this discretion, the Court must observe Rule 17(a)'s purposes of protection of the defendant from subsequent litigation and final resolution of the dispute at hand. *Id.* at 1371.

Plaintiff has brought to the Court's attention two recent cases permitting post-judgment ratification or joinder to solve

real-party-in-interest controversies. In *U–Haul Intern'l, Inc. v. Jartran, Inc.*, 793 F.2d 1034 (9th Cir.1986), U–Haul International brought suit against Jartran for damages sustained as a result of false comparative advertising. U–Haul brought the suit to recover damages to all of the U–Haul system, although it received only five to ten percent of the rental transaction revenue, with the balance being distributed throughout the system's fleet owners, rental companies and rental dealers. Following a judgment in favor of U–Haul International, Jartran filed a motion for judgment notwithstanding the verdict on the ground that, due to U–Haul's system structure, U–Haul International was not the real party in interest and therefore could not recover damages for system members not parties to the action.

On appeal of the district court's denial of Jartran's motion, the Ninth Circuit held that, although it was possible that U–Haul International was a real party in interest for the purpose of defining the aggregate award, it was not the real party in interest for determining the allocation of that amount among the individual members of the system. Pointing to Rule 17(a), the court remanded the action to permit U–Haul International to obtain the ratification or joinder of absent members of the system, stating that "to the extent U–Haul obtains the ratification or joinder of the absent members of the System, 'such ratification [or] joinder ... shall have the same effect as if the action had been commenced in the name of the real party in interest.'" *U–Haul Internat'l, Inc., supra* at 1039–40 (citations omitted).

In *Sun Refining and Marketing Co. v. Goldstein Oil Co.*, 801 F.2d 343 (8th Cir. 1986), the Eighth Circuit was presented with a post-judgment real-party-in-interest objection. There, Apex, a general partner of defendant Goldstein Oil, entered into an agreement to purchase oil from a predecessor of Sun Refining and Marketing Company ("SRMC"). The agreement provided for the payment of demurrage to Sun Transport, the owner of the vessel used to transport the oil, in the event the vessel was detained beyond the laytime provided in the agreement. As a part of the suit, SRMC alleged a claim for demurrage. The district court entered judgment in favor of Apex on the demurrage claim on the ground that SRMC was not the real party in interest.

The Eighth Circuit reversed and remanded the district court's judgment in favor of Apex on the demurrage claim, instructing the district court to reconsider its judgment in light of Rule 17(a)'s provision for ratification or joinder. Noting that SRMC had obtained ratification from Sun Transport following entry of judgment and that SRMC's attempt to reopen the case pursuant to Fed.R.Civ.P. 52 and 59 was denied, the court reasoned that the "[district] court erred in not accepting the ratification obtained by SRMC from Sun Transport." *Sun Refining, supra* at 345.

As there exists persuasive authority permitting post-judgment application of Rule 17(a), the Court will afford ARAMCO the opportunity to obtain ratification of, or joinder by, the Kingdom. Absent the Kingdom's ratification or joinder, however, the judgment of the Court shall stand.

CONCLUSION

ARAMCO is not the proper party for maintenance of the statutory claims in this suit. However, the Court will allow ARAMCO thirty (30) days from the date entry of this Order to obtain an appropriate ratification by, or joinder of, the Kingdom of Saudi Arabia. Should ARAMCO be successful in that pursuit, the Court will enter judgment on the statutory claims. In the absence of such ratification or joinder, the September 14, 1988, judgment of the Court will stand.

SO ORDERED.